[846 NE2d 1201, 813 NYS2d 691]

WIEN & MALKIN LLP et al., Respondents, v HELMSLEY-SPEAR, INC., Appellant.

Argued January 5, 2006; decided February 21, 2006

**POINTS OF COUNSEL**

*Dickstein Shapiro Morin & Oshinsky LLP,* New York City
(*Howard Graff, Deborah A. Skakel* and *Judith R. Cohen* of

counsel), for appellant. I. The award should not be vacated under the Federal Arbitration Act after it was properly confirmed under the CPLR. (*Matter of Sprinzen [Nomberg]*, 46 NY2d 623; *Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York*, 94 NY2d 321; *Matter of Silverman [Benmor Coats]*, 61 NY2d 299; *Matter of Dowleyne v New York City Tr. Auth.*, 3 NY3d 633; *Duferco Intl. Steel Trading v T. Klaveness Shipping A/S*, 333 F3d 383; *Wallace v Buttar*, 378 F3d 182; *Burchell v Marsh*, 17 How [58 US] 344; *Wilko v Swan*, 346 US 427; *Rodriguez de Quijas v Shearson/American Express, Inc.*, 490 US 477; *Saxis S.S. Co. v Multifacs Intl. Traders, Inc.*, 375 F2d 577.) II. The decision of the Appellate Division after remand misapplies the Second Circuit's manifest disregard standard. (*Wallace v Buttar*, 378 F3d 182; *Halligan v Piper Jaffray, Inc.*, 148 F3d 197; *Westerbeke Corp. v Daihatsu Motor Co., Ltd.*, 304 F3d 200; *Hoeft v MVL Group, Inc.*, 343 F3d 57; *Matter of Lipman [Haeuser Shellac Co.]*, 289 NY 76; *Matter of Vann v Kreindler, Relkin & Goldberg*, 78 AD2d 255, 54 NY2d 936; *Matter of Andros Cia. Maritima, S.A. [Marc Rich & Co., A.G.]*, 579 F2d 691; *Blue Tee Corp. v Koehring Co.*, 808 F Supp 343; *Maross Constr. v Central N.Y. Regional Transp. Auth.*, 66 NY2d 341; *Matter of Albany County Sheriff's Local 775 of Council 82, AFSCME, AFL-CIO [County of Albany]*, 63 NY2d 654.) III. The "well-settled legal principle" relied upon by the Appellate Division in finding manifest disregard is neither clear nor applicable. (*Wallace v Buttar*, 378 F3d 182; *Westerbeke Corp. v Daihatsu Motor Co., Ltd.*, 304 F3d 200; *Security Pac. Mtge. & Real Estate Servs., Inc. v Canadian Land Co. of Am., N.V.*, 690 F Supp 1214, 891 F2d 447; *Matter of Lovece [Local 32B, Bldg. Serv. Empls. Intl. Union, AFL-CIO]*, 37 Misc 2d 709; *Quinn v Whitney*, 204 NY 363; *New England Iron Co. v Gilbert [Metropolitan] El. R.R. Co.*, 91 NY 153; *Paige v Faure*, 229 NY 114; *Nassau Hotel Co. v Barnett & Barse Corp.*, 162 App Div 381, 212 NY 568; *Devlin v Mayor, Aldermen & Commonalty of City of N.Y.*, 63 NY 8; *Canister Co. v National Can Corp.*, 71 F Supp 45.) IV. The decision of the Appellate Division after remand reached and improperly reversed an issue abandoned by Wien & Malkin LLP: the propriety of the arbitration panel's remedy on partnership voting protocols. (*Matter of Sprinzen [Nomberg]*, 46 NY2d 623; *Matter of SCM Corp. [Fisher Park Lane Co.]*, 40 NY2d 788; *Lentine v Fundaro*, 29 NY2d 382; *Matter of Paver & Wildfoerster [Catholic High School Assn.]*, 38 NY2d 669; *Konkar Mar. Enters., S.A. v Compagnie Belge D'Affretement*, 668 F Supp 267; *Matter of Antique Rug Dealers Assn. [Hakimian]*, 210 AD2d

111; *Matter of Sims v Siegelson,* 246 AD2d 374; *Matter of Silverman [Benmor Coats],* 61 NY2d 299; *Matter of Infosafe Sys. [International Dev. Partners],* 228 AD2d 272; *Matter of Barzilay [Siegman],* 161 AD2d 427.) V. The waiver of the Federal Arbitration Act (FAA) by Wien & Malkin LLP precluded its reliance on the FAA. (*Matter of Smith Barney Shearson v Sacharow,* 91 NY2d 39.) VI. The Federal Arbitration Act standards do not and should not preempt the CPLR. (*Volt Information Sciences, Inc. v Board of Trustees of Leland Stanford Junior Univ.,* 489 US 468; *Dean Witter Reynolds Inc. v Byrd,* 470 US 213; *Matter of Ball [SFX Broadcasting],* 236 AD2d 158; *Matter of Smith Barney, Harris Upham & Co. v Luckie,* 85 NY2d 193; *New York Inst. of Tech. v State Div. of Human Rights,* 40 NY2d 316; *Matter of Sprinzen [Nomberg],* 46 NY2d 623; *Local 1199, Drug, Hosp. & Health Care Empls. Union, RWDSU, AFL-CIO v Brooks Drug Co.,* 956 F2d 22; *Duferco Intl. Steel Trading v T. Klaveness Shipping A/S,* 333 F3d 383.)

*Dewey Pegno & Kramarsky LLP,* New York City (*Thomas E.L. Dewey* of counsel), and *Thelen Reid & Priest LLP* for respondents. I. The First Department correctly ruled that the arbitration panel's affirmance of the covert assignment of the management contract was in manifest disregard of the law. (*Security Pac. Mtge. & Real Estate Servs., Inc. v Canadian Land Co. of Am., N.V.,* 690 F Supp 1214, 891 F2d 447; *Government Guar. Fund v Hyatt Corp.,* 95 F3d 291; *Paige v Faure,* 229 NY 114; *Cristallina v Christie, Manson & Woods Intl.,* 117 AD2d 284; *Hardy v Walsh Manning Sec., L.L.C.,* 341 F3d 126; *Matter of Lovece [Local 32B, Bldg. Serv. Empls. Intl. Union, AFL-CIO],* 37 Misc 2d 709; *Westerbeke Corp. v Daihatsu Motor Co., Ltd.,* 304 F3d 200; *Cargo Partner AG v Albatrans, Inc.,* 352 F3d 41; *Tripi v Prudential Sec., Inc.,* 303 F Supp 2d 349; *Matter of UBS Warburg [Auerbach, Pollack & Richardson],* 294 AD2d 245.) II. The First Department correctly set aside the nullification of the without cause termination and the associated vote protocol. (*Winchell v Caron,* 260 AD2d 888; *In re Mid-Island Hosp., Inc.,* 276 F3d 123, 537 US 882; *Zolotar v New York Life Ins. Co.,* 172 AD2d 27; *Feinberg v Saks & Co.,* 56 NY2d 206; *Matter of Civil Serv. Empls. Assn., Steuben County Ch. v County of Steuben,* 50 AD2d 421; *Sweeney v Herman Mgt.,* 85 AD2d 34; *Matter of Oset v Can/Am Youth Servs.,* 212 AD2d 887; *Kings Park Classroom Teachers Assn. v Kings Park Cent. School Dist.,* 100 AD2d 929; *Inter-City Gas Corp. v Boise Cascade Corp.,* 845 F2d 184; *Schwartz v Fortune Mag.,* 89 F Supp 2d 429.) III. The Leona Helmsley voting agreement transferring management rights to

a nonpartner is unlawful. (*Rapoport v 55 Perry Co.,* 50 AD2d 54; *Kanarek v Gadlex Assoc.,* 115 AD2d 592; *Whalen v Gerzof,* 154 AD2d 843, 76 NY2d 914; *Matter of Hunsinger v Minns,* 197 AD2d 871; *Schwartz v Public Adm'r of County of Bronx,* 24 NY2d 65; *Color By Pergament v O'Henry's Film Works,* 278 AD2d 92; *Neary v Prudential Ins. Co.,* 63 F Supp 2d 208; *Asturiana De Zinc Mktg., Inc. v LaSalle Rolling Mills, Inc.,* 20 F Supp 2d 670.) IV. The First Department properly applied the Federal Arbitration Act to review of the award, and Helmsley-Spear, Inc. waived all arguments to the contrary. (*Citizens Bank v Alafabco, Inc.,* 539 US 52; *St. Lawrence Explosives Corp. v Worthy Bros. Pipeline Corp.,* 916 F Supp 187; *Matter of Diamond Waterproofing Sys., Inc. v 55 Liberty Owners Corp.,* 4 NY3d 247; *State of N.Y. Higher Educ. Servs. Corp. v Upshur,* 252 AD2d 333; *Bingham v New York City Tr. Auth.,* 99 NY2d 355; *S.E.B. Holding Corp. v State of New York,* 9 NY2d 235; *Matter of Ball [SFX Broadcasting],* 236 AD2d 158; *Credit Suisse First Boston Corp. v Pitofsky,* 4 NY3d 149; *Allen & Co. v Shearson Loeb Rhoades,* 111 AD2d 122, 67 NY2d 709; *Halikias v Warburg Dillon Read,* 195 Misc 2d 447.)

## OPINION OF THE COURT

G.B. SMITH, J.

In this appeal we review the Appellate Division's vacatur of an arbitration award after a remand from the Supreme Court of the United States with an instruction to reconsider in light of *Citizens Bank v Alafabco, Inc.* (539 US 52 [2003]). Since arbitral judgments are owed substantial deference and there was no showing that the arbitration panel manifestly disregarded the law, the award should be reinstated. The order of the Appellate Division should, therefore, be reversed.

In 1997, Wien & Malkin LLP (Wien & Malkin) attempted to oust Helmsley-Spear, Inc. (Helmsley-Spear) as managing agent of 11 New York City properties.[1] Wien & Malkin served as the representative and designee of ownership interests in these buildings, provided legal services such as drafting leases and performed administrative tasks. Helmsley-Spear was owned by

---

1. This case involves the operating entity tier of eight properties and three partnerships with single tiers which control three other properties within Manhattan. The buildings are the Empire State Building, the Lincoln Building at 60 East 42nd Street, the Fisk Building at 250 West 57th Street, the Toy Building at 200 Fifth Avenue and 1107 Broadway, 112 West 34th Street, 1333 Broadway, 1350 Broadway, 1359 Broadway, 1400 Broadway, and 501 Seventh Avenue. 500-512 Seventh Avenue was sold during the course of arbitration.

Irving Schneider and Alvin Schwartz, both former executives in the former Helmsley-Spear Corporation.[2] The partnerships began as a result of the late Harry Helmsley's efforts to find valuable properties and offer opportunities to others, like the late Lawrence A. Wien, to syndicate interests in the properties to passive investors.

In 1997, Peter Malkin, the current chairman of Wien & Malkin and son-in-law of the late Lawrence A. Wien, sent a request to the partners in 200 Fifth Avenue Associates (Toy Center Joint Venture), Fisk Building Associates, and Lincoln Building Associates asking that they authorize him to terminate Helmsley-Spear without cause and retain a new managing agent. In August 1997, three of the partnerships voted to remove Helmsley-Spear without cause by votes of 60% or more.[3] Helmsley-Spear obtained a stay and on September 8, 1997, Supreme Court granted Helmsley-Spear's motion to compel arbitration.

Later in September 1997, Leona Helmsley entered into a series of agreements with Irving Schneider and Alvin Schwartz, who owned one-tenth percent (.1%) of Helmsley-Spear.[4] Both Schneider and Schwartz held an option to purchase all of Helmsley-Spear's share from Helmsley Enterprises.[5] Schneider and Schwartz formed a new corporation called "HS Acquisition Corporation" or "Newco" which purchased substantially all of the assets of the original Helmsley-Spear and renamed itself "Helmsley-Spear, Inc." Newco possessed the right to manage the 11 properties. Leona Helmsley granted the new corporation

---

2. Leona Helmsley was originally a party in this matter until December 1997 when she settled with Wien & Malkin. Mrs. Helmsley was a principal of Helmsley-Spear and the sole beneficiary of her husband's interests in the partnerships at issue. Alvin Schwartz died in 2001.

3. Partners representing a 69.16667% interest in the Toy Center Joint Venture, 60% interest in Fisk Building Associates, and 69.653417% interest in Lincoln Building Associates granted Mr. Malkin the authority to vote their interests and terminate Helmsley-Spear as managing agent.

4. At the time, Leona Helmsley's company, Helmsley Enterprises, owned 99.9% of Helmsley-Spear.

5. The option, originated in 1970, provided:
"This agreement shall be binding upon the heirs and legal representatives of the individual parties and upon the successors and assigns of HELMSLEY ENTERPRISES, INC. and HELMSLEY-SPEAR, INC. The rights of SCHWARTZ and SCHNEIDER hereunder are personal to each of them and to the survivor of them, and are not transferable by both or either by operation of law or otherwise."

her irrevocable proxy to vote in favor of Helmsley-Spear's retention as managing agent of the properties, as long as Messrs. Schneider and Schwartz remained as managers of Helmsley-Spear.

During arbitration, Wien & Malkin and Peter Malkin (collectively, Wien & Malkin) sought termination of Helmsley-Spear as managing agent on both "for cause" and "without cause" grounds.[6] The matters were consolidated by the New York City office of the American Arbitration Association under its Commercial Arbitration Rules, and the panel was comprised of three distinguished arbitrators.[7] The proceedings began in June 1998. Evidentiary hearings occurred between April 1999 and June 2000, during which the parties offered approximately 1,000 exhibits each. Over 50 witnesses testified during more than 60 days of hearings.

On March 30, 2001, the arbitration panel issued a 134-page decision that denied Wien & Malkin's request to remove Helmsley-Spear as managing agent for cause and without cause. Helmsley-Spear was declared the legal and valid successor in interest to the former Helmsley-Spear Corporation and to have validly exercised the option agreement of 1970; Wien & Malkin was enjoined from contesting the validity or in any way interfering with the voting agreement between Leona Helmsley and Helmsley-Spear; and Wien & Malkin was enjoined from calling or holding a partnership meeting for the purpose of removing Helmsley-Spear as managing agent unless it followed an outlined 11-step procedure.

Helmsley-Spear then moved to confirm the award while Wien & Malkin moved to vacate it, claiming that there were many areas in which the decision was "legally in error." Supreme Court disagreed and confirmed the award on July 23, 2001. The Appellate Division concluded that since the dispute involved buildings within New York City and did not have a substantial effect on interstate commerce, the Federal Arbitration Act did not ap-

---

**6.** Wien & Malkin originally commenced two separate arbitrations: one, on behalf of all 11 partnerships to terminate Helmsley-Spear as the exclusive managing and leasing agent for cause and two, on behalf of three partnerships (Lincoln Building Associates, Fisk Building Associates, and 200 Fifth Avenue Associates) to terminate Helmsley-Spear without cause. These actions were ultimately consolidated.

**7.** The arbitrators were Nicholas deB. Katzenbach, a former United States Attorney General and Under Secretary of State, William L.D. Barrett and John M. Wilkinson.

ply. It unanimously affirmed the confirmation under CPLR 7511 stating:

> "[T]he award must stand unless shown to be utterly arbitrary or violative of public policy. We are not empowered to vacate an award merely for errors of law or fact committed by the arbitrators . . . . [W]e conclude that the arbitration panel's findings . . . were not so arbitrary as to warrant vacatur" (300 AD2d 32, 33 [2002] [citations omitted]).

The United States Supreme Court granted certiorari and, on October 6, 2003, vacated the Appellate Division's judgment and remanded the matter for further consideration in light of the Court's holding in *Citizens Bank v Alafabco, Inc.* (539 US 52 [2003])[8] (*Wien & Malkin LLP v Helmsley-Spear, Inc.*, 540 US 801 [2003]).

Upon remand, Wien & Malkin argued that the FAA was applicable to this matter, the award should be vacated because the panel incorrectly recognized the new Helmsley-Spear as a valid successor, and the voting agreement between Leona Helmsley and Messrs. Schwartz and Schneider was unenforceable. The Appellate Division reversed Supreme Court's order and vacated the challenged portion of the arbitration award (12 AD3d 65 [2004]). The Court reasoned that under the FAA, the issue was whether the award exhibited a "manifest disregard of the law" such that vacatur was warranted (*id.* at 66, citing *Matter of Spear, Leeds & Kellogg v Bullseye Sec.*, 291 AD2d 255, 256 [1st Dept 2002]; *Halligan v Piper Jaffray, Inc.*, 148 F3d 197, 204 [2d Cir 1998], *cert denied* 526 US 1034 [1999]). The Appellate Division relied on its own jurisprudence in *Sawtelle v Waddell & Reed* (304 AD2d 103, 108 [2003]), and held that the arbitration

---

**8.** In *Citizens Bank v Alafabco, Inc.*, the Supreme Court held that the Federal Arbitration Act (FAA) encompasses a wider range of transactions than those actually "in commerce" (539 US at 56). The FAA states, in part:

> "A written provision in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 USC § 2.)

The Supreme Court's remand, therefore, meant that if the subject matter of an arbitration merely affected interstate commerce, the FAA would apply.

panel committed clear legal error and manifestly disregarded both contract law and the applicable agreements. It reasoned that the "conduct of Leona Helmsley and defendant's principals in entering an agreement assigning Helmsley-Spear's personal services contracts to defendant was a clear violation of the well-settled legal principle that personal services contracts . . . may not be assigned without the consent of the principal" (12 AD3d at 71 [citations omitted]). It determined that the new Helmsley-Spear was not a mere "change of form" and that the panel "ignored the facts that Helmsley-Spear, Inc. had different officers, directors, shareholders, management personnel, financial structure and fewer properties under management than Helmsley-Spear" (*id.* at 72).

The Court also found that the arbitrators manifestly disregarded the applicable agreements by finding that Wien & Malkin was bound to retain Helmsley-Spear as managing agent due to defects in the proxy voting procedure. The Court reasoned that:

> "Contrary to the findings of the arbitration panel, the partnership agreements did not provide for a particular method of solicitation of proxies for a vote to terminate the managing agents and did not establish a fiduciary duty to them. Nor was there any showing that Peter Malkin fraudulently induced the partners to give him their proxies" (*id.*).

Finally, the Court concluded that the arbitrators did not err by upholding Leona Helmsley's voting agreement with the new Helmsley-Spear but noted that this issue was academic in light of its conclusions that the arbitrators erred in finding the proxy solicitation process defective.

The Appellate Division granted Helmsley-Spear leave to appeal to this Court, and certified the following question: "Was the order of this Court, which reversed the judgment of Supreme Court, properly made?" For the reasons that follow, we conclude that it was not.

It is well settled that judicial review of arbitration awards is extremely limited (*see Paperworkers v Misco, Inc.,* 484 US 29 [1987]). An arbitration award must be upheld when the arbitrator "offer[s] even a barely colorable justification for the outcome reached" (*Matter of Andros Cia. Maritima, S.A. [Marc Rich & Co., A.G.],* 579 F2d 691, 704 [2d Cir 1978]). Indeed, we have stated time and again that an arbitrator's award should not be vacated for errors of law and fact committed by the arbitrator

and the courts should not assume the role of overseers to mold the award to conform to their sense of justice (*see Matter of Sprinzen [Nomberg]*, 46 NY2d 623, 629 [1979]; *Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York*, 94 NY2d 321, 326 [1999] ["A court cannot examine the merits of an arbitration award and substitute its judgment for that of the arbitrator simply because it believes its interpretation would be the better one"]).

The FAA permits vacatur of an arbitration award on four grounds which all involve fraud, corruption or misconduct on the part of arbitrators, grounds which are inapplicable to the present matter.[9] In addition to these four grounds, an award may be vacated under federal law if it exhibits a "manifest disregard of law" (*Duferco Intl. Steel Trading v T. Klaveness Shipping A/S*, 333 F3d 383, 388 [2d Cir 2003]; *Goldman v Architectural Iron Co.*, 306 F3d 1214, 1216 [2d Cir 2002], citing *DiRussa v Dean Witter Reynolds Inc.*, 121 F3d 818, 821 [2d Cir 1997]).[10] But manifest disregard of law is a "severely limited" doctrine (*Matter of Arbitration No. AAA13-161-0511-85 Under Grain Arbitration Rules*, 867 F2d 130, 133 [2d Cir 1989]). It is a doctrine of last resort limited to the rare occurrences of apparent "egregious impropriety" on the part of the arbitrators, "where none of the provisions of the FAA apply" (*Duferco*, 333 F3d at

---

9. The FAA states, in part:
   "In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
   "(1) where the award was procured by corruption, fraud, or undue means;
   "(2) where there was evident partiality or corruption in the arbitrators, or either of them;
   "(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
   "(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made" (9 USC § 10 [a]).

10. The term "manifest disregard of law" originated in dicta within *Wilko v Swan* (346 US 427, 436-437 [1953]), where Justice Reed wrote, "the interpretations of the law by the arbitrators in contrast to manifest disregard are not subject, in the federal courts, to judicial review for error in interpretation."

389). The doctrine of manifest disregard, therefore, "gives extreme deference to arbitrators" (*DiRussa*, 121 F3d at 821).[11] The Second Circuit has also indicated that the doctrine requires "more than a simple error in law or a failure by the arbitrators to understand or apply it; and, it is more than an erroneous interpretation of the law" (*Duferco*, 333 F3d at 389). We agree with that premise. To modify or vacate an award on the ground of manifest disregard of the law, a court must find "both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case" (*Wallace v Buttar*, 378 F3d 182, 189 [2d Cir 2004], quoting *Banco de Seguros del Estado v Mutual Mar. Off., Inc.*, 344 F3d 255, 263 [2d Cir 2003]).

The Appellate Division considered three issues when it reviewed the 2001 panel award. Specifically, the Court considered whether the panel manifestly disregarded the law when it (1) concluded that Helmsley-Spear was a valid successor in interest to the former Helmsley-Spear by virtue of the 1997 agreements; (2) annulled the purported proxy vote taken by Peter Malkin to terminate Helmsley-Spear without cause at three of the buildings; and (3) upheld the voting agreement between Leona Helmsley and Messrs. Schneider and Schwartz. We address each issue in turn.

First, the Appellate Division found that the arbitrators manifestly disregarded the law in concluding that the new Helmsley-Spear should be the managing agent for the 11 properties. The arbitrators found that the new Helmsley-Spear was the valid successor in interest to the former Helmsley-Spear because it deemed Messrs. Schneider and Schwartz to have exercised the 1970 option agreement in 1997. The Appellate Division, however, found that Messrs. Schneider and Schwartz did not exercise the 1970 option agreement, and that under the

---

11. Vacatur on the ground of manifest disregard of law is rare (*see Duferco*, 333 F3d at 389 [stating that since 1960 the Second Circuit has vacated some part or all of an arbitral award for manifest disregard in only four out of 48 cases: *Halligan v Piper Jaffray, Inc.*, 148 F3d 197 (2d Cir 1998); *New York Tel. Co. v Communications Workers of Am. Local 1100, AFL-CIO Dist. One*, 256 F3d 89 (2d Cir 2001); *Fahnestock & Co., Inc. v Waltman*, 935 F2d 512 (2d Cir 1991); and *Perma-Line Corp. of Am. v Sign Pictorial & Display Union, Local 230, Intl. Bhd. of Painters & Allied Trades, AFL-CIO*, 639 F2d 890 (2d Cir 1981)]). These cases, excepting *Halligan*, all "involve[ ] . . . arbitral decision[s] that exceed[ ] the legal powers of the arbitrators" (*id.*), an issue not presented in the current case.

1997 transactions, the new Helmsley-Spear was not a successor, but an assignee.[12] Thus, the Appellate Division reasoned, the assignment of the 11 management contracts to the new Helmsley-Spear was invalid because those 11 contracts were contracts for personal services, which may not be assigned absent the principal's consent.

The Appellate Division is correct that personal services contracts generally may not be assigned absent the principal's consent (*see* 9 Corbin, Contracts § 865 [interim ed]; 3 Farnsworth, Contracts §§ 11.4, 11.10 [3d ed]).[13] Unlike the Appellate Division, however, we do not believe that this rule is clearly applicable to the facts of this case.

> In relevant part, the panel determined:

> "The parties to the 1997 transaction cast it as a purchase of the assets of the existing Helmsley-Spear corporation rather than a purchase of its stock. We are persuaded this change was merely one of form, done for tax reasons having to do with certain 'parked' properties that are unrelated to the issues of this case. [Wien & Malkin has] not persuaded us that the change of form had any other consequence to the parties, to the partnerships or to Wien & Malkin."

The Appellate Division stated that the panel "erroneously conclud[ed] that Helmsley-Spear[ ] was a mere 'change of form' " and "ignored the facts that Helmsley-Spear[ ] had different officers, directors, shareholders, management personnel, financial structure and fewer properties under management

---

**12.** A successor in interest is "[o]ne who follows another in ownership or control of property" and "retains the same rights as the original owner, with no change in substance" (Black's Law Dictionary 1446 [7th ed 1999]). An assignee is "[o]ne to whom property rights or powers are transferred by another" and "[c]ourts recognize the protean nature of the term and are therefore often forced to look to the intent of the assignor and assignee in making the assignment" (Black's Law Dictionary 114 [7th ed 1999]).

**13.** Helmsley-Spear argues that these were not personal services contracts, and that even if they were, New York law provides an exception to that general rule where there are no words restraining assignment and "[t]he matter of the contract involved no personal relation or confidence between the parties, or exercise of personal skill or science, for the contractor was a corporation and its work was necessarily to be done through agents or servants" (*New England Iron Co. v Gilbert [Metropolitan] El. R.R. Co.*, 91 NY 153, 167 [1883]). Because we hold that the arbitration panel was justified in reaching its conclusion based on the grounds it stated, we do not need to reach this issue.

than [the former] Helmsley-Spear" (12 AD3d at 72). Manifest disregard of the facts is not a permissible ground for vacatur of an award (*Wallace v Buttar*, 378 F3d at 193; *Westerbeke Corp. v Daihatsu Motor Co., Ltd.*, 304 F3d 200, 213 [2002], citing *ConnTech Dev. Co. v University of Conn. Educ. Props., Inc.*, 102 F3d 677, 687 [2d Cir 1996] ["holding that an erroneous factual determination is not a ground for vacating an arbitration award"]).

Whether the 1970 option agreement was exercised was a factual determination by the panel and its findings should remain undisturbed. In *Paperworkers v Misco, Inc.*, the Supreme Court stated:

> "[W]here it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect. If the courts were free to intervene on these grounds, the speedy resolution of grievances by private mechanisms would be greatly undermined. . . . *But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision*" (484 US 29, 38 [1987] [emphasis added]; *see also Matter of Dowleyne v New York City Tr. Auth.*, 3 NY3d 633, 634 [2004] [reversing the Appellate Division's vacatur of an arbitration award "because it improperly substituted its factual finding for that of a majority of the arbitration panel"]).

The arbitration panel did not manifestly disregard the law when it concluded that Helmsley-Spear remained the valid managing agent after the 1997 transaction. There were several underlying contracts between Helmsley-Spear, Wien & Malkin, and their previous incarnations that would understandably lead the panel to conclude that the parties contemplated an ongoing contractual relationship with successors of Helmsley-Spear.[14] In addition, Wien & Malkin specifically contemplated that Messrs.

---

14. For example, the partnership agreement for the Empire State Building Company stated, "Helmsley-Spear, Inc. or its successor is named as the managing agent" and the 1960 modification agreement for 1359 Broadway Associates provided for voting to terminate Helmsley-Spear "in the event of the death of Harry B. Helmsley or his retirement from active participation in the conduct of the business of Helmsley-Spear, Inc. or its successors."

Schneider and Schwartz would one day control Helmsley-Spear because the firm drafted the 1970 option. The 1997 acquisition agreement stated, "[t]he parties acknowledge and agree that they have entered into this Agreement in implementation of the exercise of the option granted in 1970 by Harry B. Helmsley to Schneider and Schwartz to acquire the balance of the outstanding shares of [Helmsley-Spear] upon his death." While the Appellate Division indicated that the panel "ignored" the fact that the new Helmsley-Spear's characteristics differed from the former Helmsley-Spear, the panel found that the change in the company's form was merely a "technical matter" and that Wien & Malkin failed to prove that "the change of form had any other consequence to the parties." In this regard, the Appellate Division improperly disturbed the panel's finding that the change in form was not consequential (*see Wallace*, 378 F3d at 193; *Westerbeke*, 304 F3d at 213 ["Under the manifest disregard standard . . . the governing law must clearly apply to the facts of the case, *as those facts have been determined by the arbitrator*"]).

Accordingly, even if the property management agreements constituted unassignable personal services contracts, the arbitration panel did not manifestly disregard the law because its conclusion, that Helmsley-Spear remained the managing agent as the valid successor in interest to the former Helmsley-Spear, was more than "barely colorable" (*Wallace*, 378 F3d at 190 [emphasis deleted]).

Even if the law of assignment of personal services contracts was clearly applicable, there was no showing that the arbitrators knew they were disregarding the law by naming Helmsley-Spear a valid successor in interest. The Appellate Division did not address the other half of the manifest disregard standard: that "the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether" (*Wallace*, 378 F3d at 189). "Explicit rejection of governing law provides the strongest evidentiary basis for a finding that the arbitrator acted with the requisite intent" (*Westerbeke*, 304 F3d at 217). There is no explicit evidence in the record that any of the arbitrators believed that contractual assignment law applied. Nor is there any deliberateness or willfulness exhibited within the award that shows the arbitrators' intent to flout the law. The arbitrators' reasoning—that the option agreement was exercised—does not "strain[ ] credulity" (*id*. at 218). Therefore, the panel's conclusion regarding the 1997 transaction between

Leona Helmsley and Messrs. Schneider and Schwartz was not a manifest disregard of law. Thus, the Appellate Division erred in vacating that portion of the award.

Next, the Appellate Division held that the arbitration panel manifestly disregarded the law by voiding the purported proxy vote conducted by Peter Malkin to terminate Helmsley-Spear's services without cause at three of the partnerships. As the Appellate Division explained:

> "Contrary to the findings of the arbitration panel, the partnership agreements did not provide for a particular method of solicitation of proxies for a vote to terminate the managing agents and did not establish a fiduciary duty to them. Nor was there any showing that Peter Malkin fraudulently induced the partners to give him their proxies" (12 AD3d at 72).

In *Westerbeke*, the Second Circuit stated that vacatur on the basis of manifest disregard of a contract is appropriate only where "the arbitral award contradicts an express and unambiguous term of the contract or if the award so far departs from the terms of the agreement that it is not even arguably derived from the contract" (304 F3d at 222). Here, the arbitral award does not contradict any express and unambiguous terms of the contracts. The partnership agreements provided that the partners could terminate Helmsley-Spear without cause "by the written vote of parties representing at least [50% or 60%] of the ownership of the assets of the joint venture." In annulling the proxy vote, the arbitration panel found that Malkin's solicitation of the proxies "was not preceded or accompanied by any disclosure at all" and that he failed to obtain "an informed vote of the general partners." It was within the panel's discretion to conclude that certain procedures needed to be put in place to ensure an informed vote. The panel, therefore, did not manifestly disregard the law in annulling the proxy votes.

The final issue is whether the voting agreement between Leona Helmsley and Messrs. Schneider and Schwartz was valid. The Appellate Division reasoned that the voting agreement did not transfer Leona Helmsley's partnership interest, "but merely made an agreement to vote for the retention of Newco as managing agent, a vote she was entitled to cast with or without the agreement" (12 AD3d at 73). Ultimately, the Appellate Division termed this issue "academic" (*id.*).

■ Wien & Malkin argues that the transfer of a partner's management rights to a nonpartner is unlawful because it interferes with administration of the partnership (citing *Rapoport v 55 Perry Co.*, 50 AD2d 54, 57 [1st Dept 1975]). Wien & Malkin posits that the clearly applicable laws are Partnership Law § 40 (7) and § 53 (1).[15] While it is clear that the affairs of partners should be managed by partners, Leona Helmsley's agreement involved "a vote she was entitled to cast" in whatever manner she chose. Therefore, we agree with the lower court's reasoning that the arbitrators did not manifestly disregard the law by concluding Mrs. Helmsley's actions did not violate state partnership law. The panel reasoned that there was no claim that Helmsley-Spear sought to become a partner, only that a partner agreed to vote on a specific limited issue, and that invalidating the voting agreement would undermine the option agreement, which "further[ed] the interests of the partnership and the continuity of its business." This analysis shows no evidence of the panel's intent to disregard the law. Therefore, its award on this matter will also stand.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the judgment of Supreme Court, New York County, reinstated. The certified question should not be answered upon the ground that it is unnecessary.

Judges CIPARICK, ROSENBLATT, GRAFFEO and R.S. SMITH concur; Chief Judge KAYE and Judge READ taking no part.

Order reversed, etc.

---

**15.** Partnership Law § 40 (7) states, "No person can become a member of a partnership without the consent of all the partners." Partnership Law § 53 (1) states:

> "A conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership, nor, as against the other partners in the absence of agreement, entitle the assignee, during the continuance of the partnership, to interfere in the management or administration of the partnership business or affairs, or to require any information or account of partnership transactions, or to inspect the partnership books; but it merely entitles the assignee to receive in accordance with his contract the profits to which the assigning partner would otherwise be entitled."