NSB Advisors, LLC, Petitioner,

against
C.L. King & Associates, Inc., Respondent.


657034/2017

Plaintiff's attorneys: Ramsey Hinkle and Denis P. Kelleher of Clayman & Rosenberg LLP
Defendant's attorneys: Jordan M. Kam and Stanislav Sharovskiy of The Roth Law Firm, PLLC


Charles E. Ramos, J.

Petitioner NSB Advisors, LLC (NSB) moves, pursuant to CPLR 7502[a] and 7510, to confirm an arbitration award (Award) issued by the Financial Industry Regulatory Authority (FINRA) in NSB Advisors LLC v C.L. King & Assocs., Inc., FINRA No. 15-01198 (Arbitration), on November 3, 2017 in New York City (Petition Ex. 1). Respondent C.L. King & Associates, Inc. (CL King) cross-moves to vacate the Award.
Factual Background
The underlying dispute stems from financial losses incurred in connection with NSB's management of CL King's funds in or around 2011 and 2012.
NSB is a limited liability company incorporated in Maryland, with its principal place of business in Fishkill, New York (Petition, at 1). NSB is a Registered Investment Advisor (RIA) with the Securities and Exchange Commission (SEC) (Id.). CL King is a New York corporation and a custodial broker-dealer with a principal place of business in New York, New York (Id., at 2; Services Agreement, Roth Aff. Ex. 9, at 1).
On May 1, 2009, NSB and CL King entered a services agreement (Services Agreement) whereas CL King agreed to provide custody and clearing services for NSB customers' securities, and other back office services (Services Agreement, Roth Aff. Ex. 9). CL King additionally served as a margin lender for NSB's individual customer accounts, but not NSB directly (Id.; Customer Agreement, Roth Aff. Ex. 12). CL King held the role of a non-discretionary custodial broker with the exclusive right to set and change margin requirements, and liquidate securities to meet margin maintenance calls (Customer Agreement, Roth Aff. Ex. 12; Margin Disclosure Statement, Roth Aff. Ex. 13). NSB was to monitor client accounts, know its customers, provide suitable investment advice, and trade securities in the accounts (Notice to Clients of NSB, Roth [*2]Aff. Ex. 10). NSB's Managing Member and Chief Investment Officer, William Nicklin, made the investment decisions for NSB customers, of which he was one.
In late 2011 and early 2012, NSB's short call options and long equity positions lost value (Short Options Liability Metric Chart, Roth Aff. Ex. 16). NSB thereafter borrowed hundreds of millions of dollars in additional funds from CL King, increasing CL King's credit risk exposure (Id.). On March 14, 2012, after NSB's investments incurred more losses, CL King terminated the Services Agreement.
On April 30, 2012, CL King's Chief Financial Officer, Robert Benton, sent a letter to Nicklin stating that CL King would begin liquidating securities in Nicklin's account starting on May 1, 2012 to meet the regulatorily-mandated NYSE margin call (Roth Aff. Ex. 18). CL King similarly liquidated certain other NSB customers' securities.
On August 10, 2012, CL King commenced FINRA arbitration proceedings against Nicklin in C.L. King & Assocs., Inc. v Nicklin, FINRA No. 12-02927 (Nicklin Arbitration) (Nicklin Arbitration Award, Roth Aff. Ex. 22, at 1). On or about March 13, 2014, NSB commenced an Arbitration against CL King, which was originally consolidated with the Nicklin Arbitration (Arbitration Award, Petition Ex. 1, at 1-2). After NSB filed for Chapter 11 bankruptcy, the arbitration panel severed the Nicklin Arbitration from the Arbitration on March 26, 2015 (Id., at 2).
The three-person Nicklin Arbitration panel ultimately ruled in favor of CL King, issuing an award for $13,097,946.12, plus fees and interest, representing the margin balance Nicklin owed to CL King after his securities were liquidated (Nicklin Arbitration Award, Roth Aff. Ex. 22, at 3). This Court confirmed the award (March 6, 2017 Order of Hon. Bransten, Petition Ex. 3). The Nicklin Arbitration panel also ordered that all evidence admitted in the Nicklin Arbitration be deemed admitted in the Arbitration (March 26, 2015 Nicklin Arbitration Order, Petition Ex. 2).
On December 4, 2015, a judge of the U.S. District Court for the Southern District of New York appointed a liquidating trustee (Liquidating Trustee) in NSB's bankruptcy to continue NSB's pending actions (Petition, at 2). The Liquidating Trustee reinstituted the Arbitration (Id.).
NSB's Amended Statement of Claim in the Arbitration, dated October 10, 2014, asserted causes of action against CL King for (1) breach of contract and of the implied covenant of good faith and fair dealing; (2) breach of the reasonable commercial standards of fair dealing imposed by FINRA and the NYSE; (3) breach of the reasonable commercial standards of fair dealing imposed by the Uniform Commercial Code (UCC); (4) breach of duty of best execution; (5) gross negligence; (6) fraud; and (7) tortious interference with prospective economic advantage (Amended Statement of Claim, Roth Aff. Ex. 5). Some of these were identical causes of action that were the basis of Nicklin's dismissed counterclaims in the Nicklin Arbitration (Answer to Statement of Claim and Amended Counterclaims, Roth Aff. Ex. 20; Nicklin Arbitration Award, Roth Aff. Ex. 22, at 3).
On November 3, 2017 the Arbitration panel (Panel) issued an Award of $1,750,000 in compensatory damages to NSB (Arbitration Award, Petition Ex. 1). The two-person Panel was comprised of two of the three arbitrators who issued an award in CL King's favor in the Nicklin Arbitration (Petition at 3). NSB thereafter commenced the instant action to confirm the Arbitration award on November 20, 2017.
[*3]Discussion
The arbitration clause in the Services Agreement provides that any dispute "shall be conducted before arbitration facilities provided by the FINRA (pursuant to its rules, including those related to discovery) at a site in New York, New York" (Roth Aff. Ex. 9, at 5). The Federal Arbitration Act (FAA) governs the confirmation of FINRA arbitration awards (Dishner v Zachs, 2016 WL 7338418, at *1 [SDNY Dec. 19, 2016]) (citing STMicroelectronics, N.V. v Credit Suisse Securities (USA) LLC, 648 F.3d 68 [2d Cir 2011]).
The New York Court of Appeals has issued instructions as to the courts' role in reviewing arbitration awards that leave little room for interpretation:
It is well settled that judicial review of arbitration awards is extremely limited. An arbitration award must be upheld when the arbitrator offers even a barely colorable justification for the outcome reached. Indeed, we have stated time and again that an arbitrator's award should not be vacated for errors of law and fact committed by the arbitrator and the courts should not assume the role of overseers to mold the award to conform to their sense of justice.
Wien & Malkin LLP v Helmsley-Spear, Inc., 6 NY3d 471, 479-80 [2006]) (citations and quotation marks omitted) (applying federal law). A party seeking to vacate an arbitration award therefore faces a heavy burden.
This approach is only limited by exceptional circumstances. Under Section 10 of the FAA, an award can be vacated on grounds involving fraud, corruption or misconduct of the arbitrators (Wien & Malkin LLP v Helmsley-Spear, Inc., 6 NY3d at 480). These grounds do not apply here. Under federal law, an arbitration award may also be vacated where it exhibits a manifest disregard of the law (Id.).
Manifest Disregard of the Law
While Petitioner NSB moves to confirm the Award, CL King contends that the Award was issued in manifest disregard of the law. To vacate an arbitration award on this basis, a court must find that (1) the arbitration panel knew of a governing law yet refused to apply it or ignored it, and (2) the governing law was well defined, explicit, and clearly applicable (Wien & Malkin LLP v Helmsley-Spear, Inc., 6 NY3d at 481).
The manifest disregard of the law doctrine is "severely limited" and offers extreme deference to arbitrators (DiRussa v Dean Witter Reynolds Inc, 121 F3d 818, 821 [2d Cir 1997]). An arbitration award should be enforced even if there is only a "barely colorable justification" for the outcome reached (Wallace v Buttar, 378 F3d at 190) (emphasis in original). A party challenging confirmation of an arbitration award carries the burden of showing that "no reading of the facts can support the [arbitration award]" (Hardy v Walsh Manning Sec., L.L.C., 341 F3d 126, 130 [2d Cir 2003]). Judicial relief on this basis is rare (Duferco Intern. Steel Trading v T. Klaveness Shipping A/S, 333 F3d 383, 389 [2d Cir 2003]).
An explicit rejection of controlling precedent can constitute manifest disregard of the law (New York Telephone Co. v Comms. Workers of America Local 1100, 256 F3d 89 [2d Cir 2001]). As can a decision that is logically impossible (Hardy v Walsh Manning Securities, LLC, 341 F3d 126 [2d Cir 2003]). But "manifest disregard of the facts is not a permissible ground for vacatur of an award" (Wien & Malkin LLP v Helmsley-Spear, Inc., 6 NY3d at 483). Likewise, "an arbitral panel's refusal or neglect to apply a governing legal principle clearly means more than error or [*4]misunderstanding with respect to the law" (Wallace v Buttar, 378 F3d at 189) (citations and quotation marks omitted).
CL King argues that NSB failed to provide evidence to support its claims for breach of contract, breach of the covenant of good faith, gross negligence, tortious interference with prospective economic advantage, and damages. In addition, CL King argues that the Panel was provided with and disregarded governing law regarding the above claims, as well as regarding NSB's burden of proving causation, and federal preemption of issues relating to the regulation of CL King's decision to extend margin to customers or to liquidate securities to satisfy margin maintenance calls.
We need not examine CL King's arguments in more detail, as they all fail on a broader level. While the Award does not describe how the Panel arrived at its conclusions, the Panel was nonetheless entitled to make its own factual and legal findings. In challenging the Award, CL King has presented mere conjecture as to what the Panel could have been thinking in issuing a decision, and offered a way for that reasoning to have been incorrect. Such speculation is inconclusive and fails to show that the Panel lacked colorable justification for its decision.
Moreover, arbitrators are not automatically required to explain their decision (Wallace v Buttar, 378 F3d at 190) (citation and quotation marks omitted). Under FINRA Rule 13904[f], an arbitration award may contain a rationale underlying the award, in contrast to the preceding paragraph [e] that outlines what the award shall contain. Moreover, FINRA Rule 13904[g] relating to explained decisions provides that the paragraph only applies when the parties jointly request an explained decision. CL King has not alleged that the parties jointly requested an explained decision, and were not issued one. CL King therefore cannot complain of the amount of detail describing the Panel's rationale for issuing the Award.
Interestingly, CL King did not provide a complete record of the Arbitration, which contains over 16,000 pages of transcript and 800 exhibits. CL King's submissions before us include a mere snapshot of what occurred, and cannot be used as a basis for concluding that the Panel manifestly disregarded the law (Commonwealth Assocs. v Letsos, 40 FSupp2d 170, 175 [SDNY 1999]). CL King argued precisely this point before Justice Bransten in CL King & Assocs., Inc. v Nicklin, 656220/2016 (NY Sup Ct Feb. 16, 2017), where it moved to confirm the award from the Nicklin Arbitration (CL King's Reply MOL for Motion to Confirm Award from Nicklin Arbitration, Hinkle Aff. Ex. 6, at 18). As it turns out, CL King has failed to practice what it preaches.
CL King additionally challenges the Award by arguing that it is inconsistent with the award in the Nicklin Arbitration. While the panels in the Arbitration and the Nicklin Arbitration considered some of the same claims, the statements of claim in the two actions were not identical. Needless to say, the parties in the two cases were also not the same. It can certainly be justified for the Panel to have arrived at what may appear to be different conclusions in the two actions.
We will also note that, whether NSB itself requested the amount awarded is irrelevant. Arbitrators may enter lump sum awards without explaining their rationale (Koch Oil, SA v Transocean Gulf Oil Co., 751 F2d 551, 554 [2d Cir 1985]).
As all of CL King's above arguments fail, its public policy argument likewise fails. In fact, public policy favors arbitration as a means of resolving disputes in place of litigation (City [*5]of Oswego v Oswego City Firefighters Ass'n, 21 NY3d 880, 882 [2013]).
Accordingly, it is hereby
ORDERED that NSB's motion to confirm the Award is granted, and CL King's cross-motion to vacate the Award is denied; and it is further
ORDERED that the Clerk shall enter judgment accordingly.
DATED: October 2, 2018
Charles E. Ramos
J.S.C.