Matter of Rose Castle Redevelopment II, LLC v Franklin Realty Corp. (2020 NY Slip Op 03293)





Matter of Rose Castle Redevelopment II, LLC v Franklin Realty Corp.


2020 NY Slip Op 03293


Decided on June 11, 2020


Appellate Division, First Department


Oing, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 11, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

David Friedman, J.P.
Troy K. Webber
Ellen Gesmer
Jeffrey K. Oing, JJ.


652433/18 9965 

[*1]In re Rose Castle Redevelopment II, LLC, etc., Petitioner-Respondent,
v
Franklin Realty Corp., et al., Respondents-Appellants.



Respondent appeals from the order of the Supreme Court, New York County (Charles E. Ramos, J.), entered October 10, 2018, which, to the extent appealed from as limited by the briefs, granted petitioner's motion to confirm the part of a final arbitration award that reduced the "Clawback Amount" set forth in the parties' contribution agreement by $8,311,040, and denied respondents' cross motion to vacate that part of the award.




Ganfer Shore Leeds & Zauderer LLP, New York (Mark C. Zauderer, Ira Brad Matetsky and Grant A. Shehigian of counsel), for appellants.
Blank Rome LLP, New York (Stephen E. Tisman, Craig M. Flanders and Gregory P. Cronin of counsel), for respondent.



OING, J.


This appeal arises out of an arbitration before the American Arbitration Association (AAA). Respondents Franklin Realty Corp., Franklin Realty Owners LLC (FRO), and I & A Rosenberg Family LLC (collectively, respondents) seek reversal of Supreme Court's order which granted the petition by petitioner Rose Castle Redevelopment II, LLC (petitioner) to confirm the underlying arbitration award, and denied respondents' cross motion to vacate the award.
In March 2014, the parties entered into several agreements creating a joint venture whereby petitioner would acquire from respondents three parcels of real property located in Brooklyn to develop for mixed residential and commercial use (the property). The parties' transaction contemplated that petitioner would invest in respondent FRO, the entity that indirectly owned the property, and that petitioner would be responsible for rezoning the property from industrial to commercial and residential use with the goal of maximizing the residential [*2]square footage on the property (rezoning). The intended ultimate outcome of the transaction was to transfer sole ownership of respondent FRO from the other two respondents (Franklin Realty Corp. and I & A Rosenberg Family LLC) to petitioner. In that regard, pursuant to their agreements, petitioner would receive a 49.5% interest and respondents would have a 50.5% interest in respondent FRO, with petitioner ultimately obtaining a 100% interest. Also, under these agreements, petitioner would pay respondents $21 million, a guaranteed minimum contribution, and a higher amount if it successfully obtained the rezoning.
In furtherance of the transaction, the parties entered into, inter alia, a contribution agreement, dated March 6, 2014, which is the source of the instant dispute. Pursuant to that agreement, petitioner made an initial cash capital contribution to respondent FRO of approximately $10 million towards the $21 million guaranteed minimum contribution. Petitioner's second capital contribution was to be made by obtaining a mortgage loan on or before March 6, 2017, three years after executing the agreements. The parties agreed to extend this date by one month to April 6, 2017 (mortgage loan due date). The amount of petitioner's second capital contribution would be dependent on the outcome of petitioner's rezoning effort at the time of the mortgage loan due date. Sections 13.1.8 and 13.2.4 of the contribution agreement set forth four possible rezoning outcomes: positive rezoning, negative rezoning, no rezoning, or subsequent rezoning.
Meanwhile, on or about March 22, 2016, approximately two years after the parties signed their real estate agreements, the City of New York enacted legislation requiring mandatory inclusionary housing (MIH) for certain rezoned residential housing. Simply stated, MIH essentially required a rezoning application, such as the one herein, to include senior residential or affordable residential housing. MIH applied to the instant property, and would diminish the available square footage for market rate housing.
As is relevant to this appeal, sections 13.2.4 and 13.2.5 of the contribution agreement, entitled "Post Closing Matters," set forth petitioner's additional contribution, which included an initial "Loan Proceeds Amount" (undisputed to be $11 million) and a "Clawback Amount," payable in the event a favorable rezoning decision was issued after the mortgage loan due date (a "Subsequent Rezoning") in an amount based on the square footage resulting from the rezoning decision, subject to a $6.5 million minimum.
Petitioner ultimately obtained a rezoning on May 10, 2017, approximately one month after the April 6, 2017 mortgage loan due date, which under the contribution agreement is deemed a subsequent rezoning. Although petitioner could maximize the residential use of the property at about 329,000 square feet, as a result of required compliance with MIH, only 215,092 square feet was available for market rate residential use.
In August 2017, petitioner commenced an arbitration proceeding before the AAA, and in October 2017, respondents filed counterclaims in the arbitration. The sole issue before us in this appeal is the amount of petitioner's second contribution to respondent FRO as a result of the subsequent rezoning.
In determining petitioner's contribution, the arbitrator noted that the parties unquestionably wanted to maximize their profit from the development of the project, and that section 13.1.1 of the contribution agreement supported this goal in that it provided for the development of "mixed use residential and commercial development to incorporate the maximum as of right residential square footage and commercial overlay to the extent possible" on the Property. He then devoted substantial analysis to the issue noting MIH's negative economic impact on the property. The arbitrator chose 215,092 square feet as the maximum square footage, instead of 329,000 square feet, to determine the amount of petitioner's contribution under the Clawback.
The arbitrator ruled that under the Clawback provision, petitioner would be required to [*3]pay $25,811,040, but that due to the "guaranteed minimum", petitioner had to contribute $27.5 million. The arbitrator then found the Clawback provision to be ambiguous and determined that it should be construed against respondents, as drafter of that clause. After noting the testimony and evidence on this issue, the arbitrator found that "there was no agreement by the parties on the meaning of the claw back section" and that "[a]dopting the interpretation advocated by Respondents would result in unreasonable financial consequences that do not make economic sense." As such, he rejected respondents' interpretation.
In the partial final award, the arbitrator determined that "due to the guaranteed minimum," petitioner owed a total of $27.5 million, "less the $10 million already paid", leaving the remaining amount of $17.5 million due under the contribution agreement. The final award, dated May 10, 2018, incorporated, inter alia, the partial final award.
Petitioner sought to confirm the final award and respondents cross-moved to vacate the award. Supreme Court, noting that respondents were "taking on a very, very difficult task here to set aside an arbitration award" and after hearing oral arguments, confirmed the award finding that there was a "reasonable basis for the arbitrator to reach the award that he reached." This appeal ensued.
Respondents contend that the award is irrational because it is based on the arbitrator's incorrect finding that the Clawback provision is ambiguous. Compounding this error, according to respondents, is the arbitrator's ruling to construe the ambiguity against them, as drafters of the contribution agreement. That said, they argue that the arbitrator committed a $10 million error, namely, deducting that amount from the $27.5 million so that petitioner's contribution would only be $17.5 million. They complain that the arbitrator shortchanged them by $8,311,040, and accuse him of issuing a totally unjustified award.
Under CPLR 7511(b)(1), "[a]n arbitration award must be upheld when the arbitrator offers even a barely colorable justification for the outcome reached" (Wien & Malkin LLP v Helmsley-Spear, Inc., 6 NY3d 471, 479 [2006] [internal quotation marks and brackets omitted]), and "an arbitrator's award will not be vacated for errors of law and fact" (Matter of Sprinzen [Nomberg], 46 NY2d 623, 629 [1979]; see also Azrielant v Azrielant, 301 AD2d 269, 275 [1st Dept 2002], lv denied 99 NY2d 509 [2003] ["An arbitrator's award will be confirmed if any plausible basis exists for the award"] [internal quotation marks omitted]; Johnston v Johnston, 161 AD2d 125, 128 [1st Dept 1990] ["Courts will not set aside arbitration awards even where the factual findings or the legal conclusions of the arbitrator are unsound"]).
In this case, we agree with respondents that the Clawback provision is not ambiguous. Respondents' arguments, however, are misplaced. Indeed, respondents and the arbitrator arrive at the same figure of $25,811,040, petitioner's contribution under the Clawback provision, rendering the arbitrator's MIH impact analysis immaterial.
The arbitrator's reason for inserting a $10 million deduction into the formula to be applied to the square footage figure (resulting in the application of the $6.5 million amount, and a $8,311,040 reduction in the payable amount) was clear  he based it on the fact that petitioner had "already paid" that amount (i.e., $10 million), and not in reliance on any of the provisions set forth in the Clawback provision. Among other arguments made to the arbitrator, petitioner requested that the relevant portion of the contribution agreement be reformed on grounds of a scrivener's error or of mutual mistake. Although the arbitrator did not expressly so characterize his determination, reformation was, in substance, the permissible relief he granted (see Matter of SCM Corp. [Fisher Park Lane Co.], 40 NY2d 788, 792-793 [1976] [arbitrators have the power to fashion remedies, such as reformation, appropriate to the resolution of the dispute]). While a court's grant of reformation based on this record might constitute reversible error, the arbitrator's determination here passes muster, given the extremely limited scope of our review of an arbitration award (see American Intl Specialty Lines Ins. Co. v Allied Capital Corp., __ NY3d [*4]__, 2020 NY Slip Op 02529 [2020] [arbitrators routinely use their expertise to orchestrate expeditious resolutions to complex commercial legal disputes and courts are discouraged from becoming unnecessarily entangled in arbitrations]). We acknowledge respondents' argument that the arbitrator, in determining the amount of the post-closing capital contribution that petitioner was obligated to make to the parties' joint venture, rewrote the parties' agreement in a manner that could not withstand scrutiny as a rational construction of the terms of the contract as written. The result the arbitrator reached, however, is supportable as a reformation of the parties' agreement, given the highly deferential standard of review accorded arbitration awards under CPLR article 75 (id.).
We have considered respondents' remaining arguments and find them unavailing.
Accordingly, the order of the Supreme Court, New York County (Charles E. Ramos, J.), entered October 10, 2018, which, to the extent appealed from as limited by the briefs, granted petitioner's motion to confirm the part of a final arbitration award that reduced the "Clawback Amount" set forth in the parties' contribution agreement by $8,311,040, and denied respondents' cross motion to vacate that part of the award, should be affirmed, without costs.
All concur.
Order, Supreme Court, New York County (Charles E. Ramos, J.), entered October 10, 2018, affirmed, without costs.
Opinion by Oing, J. All concur.
Friedman, J.P., Webber, Gesmer, Oing, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JUNE 11, 2020
CLERK