American Intl. Specialty Lines Ins. Co. v Allied Capital Corp. (2018 NY Slip Op 07194)





American Intl. Specialty Lines Ins. Co. v Allied Capital Corp.


2018 NY Slip Op 07194


Decided on October 25, 2018


Appellate Division, First Department


Kern, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 25, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. RenwickJ.P.
Judith J. Gische
Barbara R. Kapnick
Ellen Gesmer
Cynthia S. Kern JJ.


656341/16 6966 

[*1]American International Specialty Lines Insurance Company, Petitioner-Appellant,
v
Allied Capital Corporation, et al., Respondents-Respondents.



Petitioner appeals from an order and judgment (one paper), of the
Supreme Court, New York County (Barbara Jaffe, J.), entered January 3, 2018, which, to the extent appealed from as limited by the briefs, denied the petition to vacate a corrected partial final arbitration award dated August 18, 2016 and a final arbitration award dated April 6, 2017 and to confirm a partial final arbitration award dated March 8, 2016.




Gordon Rees Scully Mansukhani, LLP, Harrison (Lorraine Girolamo of counsel), and Gordon Rees Scully Mansukhani, LLP, Glastonbury, CT (Dennis O. Brown of the bar of the State of Connecticut, State of Michigan and State of Pennsylvania, admitted pro hac vice, and Greil I. Roberts of the bar of the State of Connecticut and Massachusetts, admitted pro hac vice, of counsel), for appellant.
Offit Kurman, New York (Joseph F. Fields of counsel), and McCarter & English, LLP, New York (Adam J. Budesheim of counsel), for respondents.



KERN, J.


Appellant American International Specialty Lines Insurance Company (AISLIC) appeals from a judgment denying its petition to confirm a partial final arbitration award and to vacate a subsequently rendered partial final arbitration award and a final arbitration award. As explained below, the subsequent partial final award and final award must be vacated on the ground that the arbitration panel exceeded its authority, based on the doctrine of functus officio, when it [*2]reconsidered a final liability award it had previously rendered.
This appeal arises out of the settlement of a separate litigation in which respondent Allied Capital Corporation (Allied) agreed to pay the government $10.1 million. Allied, which maintained two insurance policies with AISLIC, treated its payment of the $10.1 million as a "Loss" as that term is defined in the policies and sought defense and indemnification for same from AISLIC.
When AISLIC denied coverage, Allied filed for arbitration, alleging that AISLIC breached its obligations under the policies to defend and indemnify it against the claims raised in the litigation. JAMS was selected to act as arbitrators. The arbitration provisions in the insurance policies did not specify that JAMS Rules would apply to the arbitration. Moreover, the panel specifically held that "the JAMS Comprehensive Rules do not govern the arbitration" and that the arbitration would be an ad hoc arbitration.
Both sides filed summary disposition motions. Allied sought a determination that it was covered under the policies for any "Loss" incurred in the other litigation, including indemnification for the $10.1 million settlement and $1.4 million in defense costs incurred in that action. AISLIC sought a determination that it was not obligated under the policies to provide coverage for the alleged losses and that there were numerous factual issues regarding Allied's alleged defense costs which warranted a hearing.
During the arbitration proceeding, the parties agreed that the panel would issue an immediate determination as to AISLIC's liability under the policies and that a separate evidentiary hearing would be ordered as to the calculation of the amount of defense costs to which Allied would be entitled in the event the panel determined that AISLIC was liable to Allied under the policies for the claims made in the other litigation. Specifically, Allied stated in its brief in opposition to AISLIC's motion that "the quantum of attorneys' fees need not be decided on this motion, but could be subject to a separate evidentiary process in the event coverage is found." At the dispositive motion hearing, Allied's counsel stated that the amount awarded as defense costs "would be the topic for a separate proceeding . . . like an inquest to prove up what was done and how much was done." Counsel for AISLIC did not disagree.
On March 8, 2016, the panel, in a 2-1 decision, issued a partial final award (the PFA) which found that the other litigation alleged covered claims against Allied and thus, Allied was entitled to defense and indemnification from AISLIC. However, the panel found that the $10.1 million that Allied paid to settle the other litigation did not amount to a "Loss" under the policies and thus, AISLIC did not have to indemnify Allied for that amount. As requested by Allied and agreed to by AISLIC, the panel ordered an evidentiary hearing solely to determine the amount Allied should be awarded in defense costs unless the parties resolved the issue on their own. Specifically, with regard to the defense costs, the panel stated:
"We find that the questions raised by the parties regarding defense costs properly reimbursable cannot be decided on motions for summary disposition. Claimants recognize this, stating that the quantum of attorneys' fees need not be decided on this motion, but could be the subject of a separate evidentiary process in the event coverage is found' and the parties are unable to resolve the matter among themselves. We agree."
Thereafter, Allied requested reconsideration of the PFA on the basis, among others, that the majority of the panel erred in finding that Allied did not suffer a "Loss" as that term was used in one of the policies. AISLIC opposed Allied's request for reconsideration on both procedural and substantive grounds, including that the JAMS Rules applied to the arbitration and barred reconsideration of the PFA and that the panel lacked the power to reconsider or modify the PFA based on the common law doctrine of functus officio.
On August 18, 2016, after a hearing, the panel issued a "Corrected" partial final award (the corrected PFA) which concluded, inter alia, that the panel had the authority to reconsider the PFA because it had not issued a final award as the amount of defense costs to which Allied was entitled remained an open issue, that the proceeding was never bifurcated, that the panel was not [*3]functus officio with respect to the PFA and could thus correct errors and reconsider the findings made in the PFA, that the JAMS Rules did not apply because the parties had opted to proceed under an ad hoc arbitration, that the $10.1 million paid by Allied to settle the other litigation amounted to a "Loss" under the policies and that damages would be revised. 
Thereafter, AISLIC commenced the proceeding giving rise to this appeal, seeking to vacate the corrected PFA and to confirm the PFA as written. Allied moved to dismiss the petition arguing that it was not ripe as the panel had yet to issue a final award. As AISLIC's petition was pending, the panel heard oral argument on the quantification of damages.
On April 6, 2017, the panel issued a final award granting Allied $7,509,144.91 in damages plus interest at the rate of 9% in the amount of $4,356,744.16 calculated from November 29, 2010. Thereafter, AISLIC filed an amended petition in the proceeding seeking to vacate the corrected PFA and final award and to confirm the PFA. AISLIC argued, inter alia, that the panel exceeded its authority in finding that the JAMS Rules did not govern the arbitration and by reconsidering the PFA based on the doctrine of functus officio. The court denied the petition to vacate, deferring to the determination of the panel that the PFA was not final and that the JAMS Rules did not apply to the proceeding.
The corrected PFA and final award should be vacated and the PFA should be confirmed on the ground that the panel exceeded its authority when it reconsidered the PFA. "Vacatur of an arbitrator's award is statutorily limited to occasions involving fraud, corruption or bias . . . or occasions when the arbitrator exceeded his or her power, or so imperfectly executed it so that a final and definite award was not made" (Matter of Curley [State Farm Ins. Co.], 269 AD2d 240, 241-242 [1st Dept 2000]; see also CPLR 7511[b]).
Here, when the panel reconsidered the PFA, it exceeded its authority based on the common law doctrine of functus officio. The doctrine of functus officio provides that absent an agreement to the contrary, after an arbitrator renders a final award, the arbitrator may not entertain an application to change the award, "except ... to correct a deficiency of form or a miscalculation of figures or to eliminate matter not submitted" (Matter of Wolff & Munier [Diesel Constr. Co.], 41 AD2d 618, 618 [1st Dept 1973]; see also Levine v Klein, 70 AD2d 532 [1st Dept 1979]; CPLR 7509; CPLR 7511[c]). "In order to be final,' an arbitration award must be intended by the arbitrators to be their complete determination of all claims submitted to them" (Michaels v Mariforum Shipping, S.A., 624 F2d 411, 413 [2d Cir 1980]). "Generally, in order for a claim to be completely determined, the arbitrators must have decided not only the issue of liability of a party on the claim, but also the issue of damages" (id. at 414).
However, "the submission by the parties determines the scope of the arbitrators' authority" (Trade & Transport, Inc. v Natural Petroleum Charterers Inc., 931 F2d 191, 195 [2d Cir 1991]). Thus, "if the parties agree that the [arbitration] panel is to make a final decision as to part of the dispute, the arbitrators have the authority and responsibility to do so . . . [and] once [the] arbitrators have finally decided the submitted issues, they are, in common-law parlance, functus officio,' meaning that their authority over those questions is ended" (id. at 195).
In Trade & Transport, Inc., a case cited by the panel and on which both sides rely, the Second Circuit found the arbitration award to be final notwithstanding the fact that the award decided only the issue of liability. The parties had agreed that the arbitration panel should make an immediate determination as to liability, acknowledging that the calculation of damages would be left for a later time. The Second Circuit held that the arbitrators were functus officio with respect to the award deciding liability based on the parties' and the panel's intent that the award as to liability would be final, reasoning as follows:
"[I]f the parties have asked the arbitrators to make a final partial award as to a particular issue and the arbitrators have done so, the arbitrators have no further authority, absent agreement by the parties, to redetermine that issue. . . .
[The parties] asked the panel to decide the issue of liability immediately . . . The panel understood that this was to be a final decision as to liability. Thus, its [*4]announcement of the [arbitration award] stated that the award was a partial final award.' Neither party disputed this characterization when the decision was rendered" (id. at 195).
In this case, the panel was functus officio with respect to the PFA and thus, the panel's reconsideration of the PFA on substantive grounds was improper and exceeded its authority. During the arbitration proceeding, AISLIC and Allied agreed that the panel was to make an immediate, final determination as to the issue of AISLIC's liability under the policies, including whether Allied had suffered an insurable "Loss" and whether Allied was entitled to defense costs, and that the issue of the amount of defense costs would be determined at a separate evidentiary hearing if it was found that the claims made in the other litigation were covered under the policies. Indeed, Allied stated in its brief in opposition to AISLIC's motion that "the quantum of attorneys' fees need not be decided on this motion, but could be subject to a separate evidentiary process in the event coverage is found." At the dispositive motion hearing, Allied's counsel stated that the amount awarded as defense costs "would be the topic for a separate proceeding . . . like an inquest to prove up what was done and how much was done." Counsel for AISLIC did not disagree. Thus, the panel had the authority and responsibility to determine the issue of AISLIC's liability under the policies and once the panel made such determination, the panel was functus officio, meaning that its authority over such issue was ended.[FN1]
Moreover, the record establishes that the panel and the parties understood that the PFA would be a final award with respect to the issue of AISLIC's liability under the policies. Indeed, the panel indicated as much when it called the award the "partial final award" as it was final with respect to such issue (emphasis added). Additionally, the fact that Allied requested, and AISLIC agreed to, an immediate determination on the liability issue, leaving the calculation of damages for a later time, indicates that the parties were seeking a final determination on the issue of AISLIC's liability under the policies.
This court is not bound by the panel's statements in the corrected PFA that the PFA was not final and that the parties did not bifurcate the proceedings. By that logic, an arbitrator could avoid exceeding his or her authority when reconsidering a partial final award as long as the arbitrator stated that the parties did not bifurcate the proceedings or that the arbitrator did not intend for the award to be final as to a particular issue. However, there is no support for such theory in the relevant case law.
Additionally, although the parties initially submitted both issues of liability and calculation of defense costs to the panel for a determination, there is no question that during the arbitration proceedings, the parties agreed to an immediate determination solely as to liability, which they expected would be final, and Allied fails to provide any support for its theory that parties to an arbitration may only seek bifurcation in their initial submission to the arbitrator or not at all.
The policy behind the functus officio doctrine lends further support to our finding that the panel was functus officio with respect to the PFA. "Functus officio" means "without further authority or legal competence because the duties and functions of the original commission have been fully accomplished" (Black's Law Dictionary 787 [10th ed 2014]). The doctrine "presumes [*5]that an arbitrator's final decision on an issue strips him of authority to consider that issue further" (Employers' Surplus Lines Ins. Co. v Global Reins. Corp.-U.S. Branch, 2008 WL 337317 *4 [SD NY 2008]). Indeed, under this doctrine, when parties request that an arbitrator finally determine an issue and the arbitrator has done so, the parties must be confident that the determination cannot and will not be revisited by the arbitrator and that the award determining such issue is final. Here, the panel finally determined the issue of AISLIC's liability under the policies and determined that Allied was entitled to defense costs. There is nothing in the record that remotely suggests that the parties or the panel believed that the PFA would be anything less than a final determination of such issues and under the functus officio doctrine, it would be improper and in excess of the panel's authority for such final determination to be revisited.
With regard to AISLIC's other argument on appeal, namely, that the panel exceeded its authority in not applying the JAMS Rules to the arbitration proceeding, the record establishes that the panel did not exceed its authority as the JAMS Rules were inapplicable to the arbitration proceeding. The panel expressly decided that "the JAMS Comprehensive Rules do not govern the arbitration," the arbitration was an ad hoc arbitration and the parties' arbitration agreement does not require the application of the JAMS Rules. Further, there is no basis for AISLIC's assertion that the JAMS Rules apply by default.
Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Barbara Jaffe, J.), entered January 3, 2018, which, to the extent appealed from as limited by the briefs, denied the petition to vacate a corrected partial final arbitration award dated August 18, 2016 and a final arbitration award dated April 6, 2017, and to confirm a partial final arbitration award dated March 8, 2016, should be reversed, on the law, without costs, the petition granted, the awards dated August 18, 2016 and April 6, 2017 vacated, and the partial final award dated March 8, 2016 confirmed.
All concur except Gische, J. who dissents in an Opinion.




GISCHE, J. (dissenting)


I disagree with my colleagues' conclusion that the arbitrators were precluded by application of the common law doctrine of functus officio from reconsidering issues before they made their final arbitration determination. Consequently, the arbitrators' decision to reconsider the disputes submitted to them and reach a different conclusion about whether respondent had suffered a loss under the relevant insurance policy, made before they finally determined the arbitration, was not in excess of their authority and did not require vacature under CPLR 7511. I would vote to affirm Supreme Court's judgment confirming the final arbitration award and dismissing the petition to vacate.
Most of the operative facts are not in dispute. Pursuant to the terms of insurance policies issued by petitioner American International Specialty Lines Insurance Company (AISLIC) to respondent Allied Capital Corporation (Allied), the parties were engaged in binding arbitration concerning AISLIC's decision to deny coverage for Allied's role in a separate litigation (Brickman action). Brickman was a qui tam action brought on behalf of the United States Government. Allied and its wholly owned subsidiary, Ciena Capital LLC (Ciena), were defendants in the Brickman action. Ciena was an underwriter for small business loans guaranteed by the Small Business Administration (SBA). The Brickman action alleged that, in violation of the Federal False Claims Act (31 USC § 3729 et seq.), Ciena submitted false information to the SBA in order to obtain loan guarantees from the SBA. Allied was alleged answerable in damages as the alter ego of Ciena. Ciena declared bankruptcy shortly after the Brickman action was filed. Subsequently, an agreement to settle the Brickman action was reached, requiring that Ciena pay the United States Government $10.1 million. The settlement amount, however, was subordinate to Allied's $320 million secured debt against Ciena, which debt greatly exceeded Ciena's assets. Consequently, the settlement was funded by Allied [*6]irrevocably releasing $10.1 million dollars of its secured debt in the bankruptcy action and obtaining a line of credit for Ciena so that the government could actually be paid.
From its inception, the following issues were put before the arbitrators: whether AISLIC properly denied coverage for Allied's claim, whether Allied's funding of the Brickman settlement constituted a covered loss, whether Allied's defense costs in the Brickman action constituted a covered loss and, if so, in what amount.
Allied sought summary disposition of all issues raised in arbitration. AISLIC opposed summary disposition in Allied's favor, insisting that some issues should be decided summarily in its favor, and other issues involved factual disputes that could not be disposed of summarily. In reply Allied posited that the "quantum of legal fees could be the subject of a separate evidentiary process." All issues raised by the parties, however, including the quantum of legal fees, were submitted to the arbitrators as part of the requests for summary adjudication.
On March 8, 2016, the three person arbitration panel issued a decision, with one arbitrator dissenting, entitled a "Partial Final Award" (PFA). The majority concluded that Allied was entitled to indemnification, but that the $10.1 million settlement did not amount to a "loss" as that term was defined under the policy. They further concluded that although AISLIC should have provided Allied with a defense in the Brickman action, the amount owed for defense costs could not be disposed of by summary adjudication, necessitating an evidentiary hearing. Allied moved for reconsideration of the original PFA, alleging both factual and legal errors. AISLIC opposed, arguing, in relevant part, that the panel was barred from any reconsideration of its original PFA both under applicable JAMS rules and the common law doctrine of functus officio.
In a written decision dated August 18, 2016, a divided panel granted reconsideration, issuing a corrected PFA that, in part, expressly addressed the gateway issue of whether it had authority to reconsider the original PFA. The majority concluded that the JAMS rules did not apply and functus officio did not bar reconsideration of the original PFA, which was not a final award. It also concluded that there was no express or implied agreement by the parties to bifurcate issues, which would otherwise render the original PFA a final award for purposes of functus officio. The panel went on to provide its decision concerning why Allied's participation in the Brickman settlement constituted a covered loss, which was contrary to the conclusion it reached in its earlier decision. The gravamen of the parties' dispute on this appeal is whether the arbitration panel acted in excess of its authority when, before finally resolving all of the issues raised in the arbitration, it reconsidered and changed the conclusions it reached in the original PFA.
Consistent with public policy in favor of arbitration, grounds for vacating an award are few in number and are narrowly applied (see CPLR 7511; Matter of Goldfinger v Lisker, 68 NY2d 225, 231 [1986]). "Absent a statutory basis for vacatur, none exists and vacatur is unauthorized" (Matter of Curley [State Farm Ins. Co.], 269 AD2d 240, 242 [1st Dept 2000]). CPLR 7511(b)(1)(iii) provides that one basis for vacating an award is that the arbitrators have exceeded their power. In general, an arbitrator will be found to have exceeded his or her power only when the arbitrator has clearly exceeded a specifically enumerated limitation on his/her authority (Matter of Kowaleski v New York State Depart. of Correctional Serv., 16 NY3d 85, 90 [2010]; Matter of Falzone [New York Cent. Mut. Fire Ins. Co.], 15 NY3d 530, 534 [2010]; Matter of New York State Correctional Officers & Police Benevolent Assn., Inc. v State of New York, 94 NY2d 321, 326 [1999]). An arbitrator's award will not be set aside based upon an error of law or fact or misapplication of the substantive law (94 NY2d at 326). Where, as here, the arbitrators are operating under a broadly worded arbitration clause, the excess of power category rarely provides a successful basis for vacatur (Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C7511:5).
I agree with the majority's conclusion that the panel correctly decided that it was not prohibited under JAMS rules from reconsideration of the original PFA because the JAMS rules do not apply to this arbitration proceeding. I also agree with the majority that there is no basis for AISLIC's assertion the JAMS rules apply by default. I reject, however, AISLIC's argument, [*7]adopted by the majority, that because the parties implicitly agreed to bifurcate issues before the arbitrators, the doctrine of functus officio precluded reconsideration of the issues determined in the original PFA. As more fully explained below, the doctrine of functus officio supports a conclusion that the arbitrators retained authority to revisit issues considered in the original PFA until such time as they issued their final arbitration award. The doctrine generally prohibits arbitrators from revisiting a matter only after a final award is made. The record also supports the arbitrators' conclusion that there was no agreement by the parties to bifurcate issues, which agreement could arguably have prohibited the arbitrators from reconsidering their interlocutory ruling. It is conceded by the parties that they had no express agreement to bifurcate issues. The arbitrators, after considering the proceedings before them, concluded that there was no implicit agreement either. Our court is bound by this factual finding by the arbitrators (Wein & Malkin, LLP v Helmsley Spear, Inc., 6 NY3d 471, 483 [2006], cert dismissed 548 US 940 [2006]; New York State Correctional Officers, 94 NY2d at 326).
Functus officio is a common law doctrine that proscribes the power of an official to amend or alter a decision once it has been rendered (Bayne v Morris, 68 US 97, 99 [1863]). It reflects the concept that once an official has fully performed the tasks assigned, s/he is without authority to do anything more (Black's Law Dictionary 787 [10th ed 2014]). In the context of arbitration, functus officio bars an arbitrator from revisiting the merits of an award once it has been finally issued (see Kalyanaram v New York Inst. of Tech., 91 AD3d 532 [1st Dept 2012]; Matter of Wolff & Munier [Diesel Constr. Co.], 41 AD2d 618 [1st Dept 1973]). Precluding arbitrators from reconsidering the merits of their own decisions arose, in part, from judicial skepticism that arbitrators could be free from outside influences in rendering their decisions (see Office & Professional Empls. Intl. Union, Local No. 471 v Brownsville Gen. Hosp., 186 F3d 326, 331 [3rd Cir 1999]; Glass Molders, Pottery, Plastics & Allied Workers Intl. Union, AFL-CIO 182B v Excelsior Foundry Co., 56 F3d 844, 847-848 [7th Cir 1995]). As arbitration became a more widely accepted dispute resolution practice, case law clarified that the doctrine of functus officio is far from absolute (2 Domke on Com Arb § 26.2). There are now widely recognized narrow exceptions to the application of the doctrine, applied to ameliorate its harsh application (see Glass Molders at 846 et seq.). These exceptions generally include the right of an arbitrator to revisit an award that is incomplete, ambiguous, or on its face incorrect (CPLR 7509; 7511[c]).
In its most strict application, however, functus officio requires finality. It follows that if an arbitration is not finally decided, the arbitrator retains the authority to revisit issues put before it. This proposition is also consistent with well established legal precedent that a court has no authority to review a nonfinal arbitration order (Mobil Oil Indonesia v Asamera Oil [Indonesia], 43 NY2d 276 [1977]). If a nonfinal award is presented for article 75 review, the court considers the arbitrators' powers imperfectly executed and the award will be vacated and the matter remanded back to the arbitrator to finally resolve all issues (CPLR 7511[d]; Matter of Andrews v County of Rockland, 120 AD3d 1227 [2d Dept 2014], lv dismissed 24 NY2d 1090 [2015]; Jones v Welwood, 71 NY 208 [1877]). Alternatively, petitions seeking review of interlocutory arbitration determinations can be dismissed outright, as having been brought prematurely (see Michaels v Mariforum Shipping, S.A., 624 F2d 411 [2d Cir 1980]). The finality requirement to determine whether an award is ripe for judicial review is the same finality requirement to determine whether an arbitrator is functus officio (Employers' Surplus Lines Ins. Co. v Global Reins. Corp.-U.S. Branch, 2008 WL 337317, *4 [SDNY 2008]).
In order for an arbitration award to be final, it must be "[i]ntended by the arbitrators to be their complete determination of all claims submitted to them," and for a claim to be completely determined the arbitrators must generally decide both liability and damages (see Michaels, 624 F2d 411, 413). Where an arbitrator retains jurisdiction solely to calculate damages due, the arbitrator's award remains interlocutory (Matter of Adelstein v Thomas J. Manzo, Inc., 61 AD2d 933 [1st Dept 1978]).
The interplay of bifurcation of the issues in arbitration proceedings, the authority of an arbitrator to reconsider its decision and the application of the functus officio doctrine, is an [*8]evolving area of law (see James M. Gaitis, J: Reexamining Finality: How to Revise Institutional Practice Rules to Allow for Reconsideration of Reasoned Arbitration Awards, 23 Alternatives to the High Cost of Litig. 113 [July/August 2005]). These concepts pit the goals of arbitration as a fast and cost efficient dispute resolution mechanism against concerns that arbitration decisions, subject only to narrow court review, could be subject to undue outside influence. There is no binding New York State authority on the effect bifurcation has on the application of functus officio. The majority opinion in this case is the first reported New York decision ever to recognize a bifurcation exception to functus officio. Even if such an exception is adopted, it does not apply to the facts of this case.
Looking to federal authority [FN1], in Trade and Transport, Inc. v Natural Petroleum Charterers, Inc. (931 F2d 191 [2d Cir 1991]), a case arising under the FAA, the parties agreed to bifurcate a limited issue of liability from the remaining issues of both liability and damages. The arbitration panel issued a partial final award on the agreed upon limited issue. In rejecting appellant's argument that the determination was not final for purposes of applying the functus officio doctrine, the court held that "...[where] the parties have asked the arbitrators to make a final partial award as to a particular issue and the arbitrators have done so, the arbitrators have no further authority, absent agreement by the parties, to redetermine that issue" (id. at 195). Following Trade and Transport, Inc., federal cases recognized that parties can, by their agreement to bifurcate, alter the finality requirement (see Doreen v Building Met Local Union, 250 F Supp 2d 107, 112 [EDNY 2003]; Goldman v Architectural Iron Co, 2001 WL 1705117, *4 [SDNY 2001]). In distinction, in Employers Surplus Lines v Global Reins. Corp., the court found no impropriety in the arbitrator revising his liability finding even after he had issued a Partial Final Award (2008 WL 337317, *4). The court recognized that in the absence of an agreement or complete severability of issues, there was no prohibition against an arbitrator revisiting the merits of any nonfinal order (see also Marathon Oil Company v ARCO, 972 P2d 595 [Sup Ct Alaska 1999]).
Applying these general principles to the arbitration at bar, there is no basis to conclude that the arbitrators exceeded their authority by revisiting the issue of whether the Brickman settlement was a covered loss under the relevant policy. Allied demanded arbitration on three claims: first, Allied claimed damages for breach of contract for failure to pay its expenses for the Brickman action; second, Allied claimed damages for failure to pay the settlement or judgment in the Brickman actions; and third, Allied sought indemnification (declaratory relief) for its settlement or judgment and defense costs of the Brickman action. All three claims were submitted to the arbitrators in the parties' summary disposition motions. The original PFA did not resolve all the submitted issues, expressly finding the "questions raised by the parties regarding defense costs properly reimbursable cannot be decided on motions for summary disposition." Final determination of defense costs, representing damages, was left for an evidentiary hearing. Because the amount of damages was not determined, the award was not final and functus officio did not apply to bar reconsideration of issues.
Although the parties could have agreed to bifurcate the proceedings so that the issue of liability resolved in the original PFA was final, they did not do so. It is conceded by the parties that there was no express agreement to bifurcate issues. AISLIC argues that an agreement can be inferred from Allied's representations before the arbitrators at the time the parties were pressing [*9]their arguments for summary adjudication. AISLIC argues that Allied's representations at the time the summary disposition motions were submitted, that the quantum of attorney's fees need not be decided as part of the motion, but could be subject to a separate evidentiary process, requires a conclusion that the parties had implicitly agreed to bifurcate the arbitration issues. Allied's representations, however, were no more than an acknowledgment that disputes about the amount of defense costs may not be disposable by a summary adjudication. Indeed, the damages issue was still submitted as part of the original request for a summary adjudication. The "bifurcation" was only a consequence of the arbitrators' conclusion that an evidentiary hearing was still needed. It was not an implicit agreement to bifurcate the liability and damages issues.
In addition, the arbitrators, in reviewing Allied's prior representations as part of the request for reargument, expressly, factually concluded that they did not constitute an implicit agreement to bifurcate. This factual finding is entitled to deference (Wein & Malkin, LLP, 6 NY3d at 483; New York State Correctional Officers, 94 NY2d at 326). Although denominating the original award as a "Partial Final Award" might suggest that bifurcation had occurred, the label ascribed to the arbitrator's award is not controlling in the face of evidence to the contrary.
Nor may AISLIC rely on the separability doctrine to sustain its claim that the original PFA was final for purposes of functus officio. The separability doctrine provides that if a partial final award fully disposes of a separate and independent claim, it may be considered final for adjudicatory purposes. Separability applies only if the issue resolved in the original PFA is wholly separate from the remaining issues (Employers Surplus Lines, 2008 WL at 337317, *6; Jones v Welwood, 71 NY 208, 217). The resolved claim must be separate and independent and not subject to abatement or set-off. A partial award is generally only separable if it disposes of both liability and damages (2008 WL at 337317, *6). The original PFA which only resolved liability would not qualify as final under the separability doctrine.
Accordingly, I believe the Supreme Court correctly denied the petition to vacate the corrected partial final arbitration award and confirmed the final arbitration award.
Order and judgment (one paper), Supreme Court, New York County (Barbara Jaffe, J.), entered January 3, 2018, reversed, on the law, without costs, the petition granted, the awards dated August 18, 2016 and April 6, 2017 vacated, and the partial final award dated March 8, 2016 confirmed.
Opinion by Kern, J. All concur except Gische, J. who dissents in an Opinion.
Renwick, J.P., Gische, Kapnick, Gesmer, Kern, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: OCTOBER 25, 2018
CLERK



Footnotes

Footnote 1:The New York State cases relied upon by Allied, namely, Matter of Adelstein v Thomas J. Manzo, Inc., 61 AD2d 933 (1st Dept 1978) and Matter of Jett v Kidder Peabody & Co. (176 Misc 2d 280 [Sup Ct, New York County 1997, Diamond, J.]), are distinguishable because in those cases, there is no evidence that the parties requested that the arbitrator make an immediate determination as to liability and leave the calculation of damages for a later time.

Footnote 1:Given the similarities between the New York Arbitration Act and the Federal Arbitration Act and the jurisprudence on arbitration issues, New York may look to federal authority for guidance (see The Hartbridge, 57 F2d 672 [2d Cir 1932], cert denied 288 US 601 [1933]; Island Territory of Curacao v Solitron Devices, Inc., 356 F Supp 1, 11-12 (SDNY 1973), affd 489 F2d 1313 [2d Cir 1973], cert denied 416 US 986 [1974].